# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Eliseo A.A.,<br><br>  Petitioner,<br><br>v.<br><br>Samuel J. Olson, *Field Office Director of Enforcement and Removal Operations, St. Paul Field Office, Immigration and Customs Enforcement*; Kristi Noem, *in her official capacity as Secretary of the U.S. Department of Homeland Security*; U.S. Dept. of Homeland Security; and Eric Tollefson, *Kandiyohi County Jail Sheriff*,<br><br>  Respondents. | Civ. No. 25-3381 (JWB/DJF)<br><br><br>**ORDER<br>ON PETITION FOR WRIT OF<br>HABEAS CORPUS** |

Evan Grant Brown, Esq., and Gloria Leticia Contreras Edin, Esq., Contreras Edin Law, counsel for Petitioner.

Ana H. Voss, Esq., David W. Fuller, Esq., United States Attorney's Office, counsel for Respondents Samuel J. Olson, Kristi Noem, and U.S. Dept. of Homeland Security.

  This case asks whether the Executive Branch may reclassify an immigration arrest after the fact in a way that denies a noncitizen the bond hearing Congress provided by statute. That question implicates the limits of executive power, the scope of congressional enactments, and the role of the judiciary in preserving habeas review.

  At issue is whether a noncitizen arrested and detained under the authority of 8 U.S.C. § 1226 is subject to that statute's discretionary detention scheme, or whether the mandatory detention provision in § 1225(b)(2) applies. Respondents, which include the

Executive Branch agencies and officials responsible for Petitioner's confinement, assert that under new Immigration and Customs Enforcement ("ICE") and Department of Justice ("DOJ") policy, § 1225 applies. Petitioner argues that § 1226 applies to his circumstance, and that his continued detention after he had been ordered released on bond violates his Fifth Amendment due process rights.

## BACKGROUND

Petitioner, a noncitizen, has resided in the United States since entering from Mexico without authorization in 2003. (Doc. No. 14, Ligon Decl. ¶ 4.) He was arrested for a traffic violation in August 2013. Two days later, ICE detained and charged him with removability under Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i). (*Id.* ¶ 6, Exs. A, B.) ICE then released Petitioner on an Order of Recognizance[1] "[p]ursuant to the authority contained in section 236 of the [INA]"—that is, pursuant to 8 U.S.C. § 1226. (*Id.*) On September 2, 2014, an immigration judge ("IJ") administratively closed Petitioner's immigration case. (*Id.* ¶ 7.)

Almost eleven years later, on June 26, 2025, ICE moved to re-calendar Petitioner's administratively closed proceedings. (*Id.* ¶ 8.) On July 8, 2025, ICE announced a new policy stating that all noncitizens who entered the United States without inspection were now deemed "applicants for admission" under INA § 235 (codified at

---

[1] An Order of Recognizance is a written release from immigration detention that requires an individual to promise to appear for future court hearings and follow certain conditions.

8 U.S.C. § 1225)—whether applying for admission or not—and therefore subject to mandatory detention under § 1225(b)(2)(A).

Petitioner was arrested on August 7, 2025, for being "an alien present in the United States without being admitted or paroled" and with "no criminal history in the United States." (Doc. No. 1, Petition ¶ 39.) This language reflects an arrest made under 8 U.S.C. § 1226, the statute that generally governs detention of individuals already present in the United States and allows them to seek a bond hearing. Petitioner was brought to Kandiyohi County Jail, and removal proceedings were reinitiated. (*Id.* ¶¶ 39–40.)

On August 19, 2025, Petitioner filed a Motion for Bond Hearing before an IJ. (*Id.* ¶¶ 42–43; Ligon Decl. ¶ 10.) The IJ granted $5,000 bond on August 21, 2025, finding that Petitioner was not a threat to public safety and not a significant flight risk. (Petition ¶ 44; Ligon Decl. ¶ 11, Ex. D.)

The Department of Homeland Security ("DHS") then filed a notice of intent to appeal (an EOIR-43 form),[2] which automatically stayed the IJ's bond order. DHS argued that Petitioner is considered an "applicant for admission" and subject to 8 U.S.C. § 1225(b)(2), a provision that applies to noncitizens seeking admission to the United States at the border, and that § 1226 did not apply. Significantly, § 1225(b)(2) mandates custody without bond. (Petition ¶ 4; Ligon Decl. ¶ 11, Ex. E.)

---

[2]   EOIR stands for Executive Office for Immigration Review, a sub-agency of the United States Department of Justice whose chief function is to conduct removal proceedings in immigration courts.

On August 22, 2025, DHS appealed the custody determination to the Board of Immigration Appeals ("BIA"). (Ligon Decl. ¶ 12, Ex. F.) Petitioner currently remains detained under the automatic stay.

Petitioner filed a habeas petition and motion for a temporary restraining order on August 27 and 29, 2025, respectively. (Doc. Nos. 1, 5.) He asserts two claims: (1) that applying § 1225(b)(2) and its mandatory detention provision to his case is unlawful and violates the INA; and (2) that his continued detention following the IJ's bond order violates his Fifth Amendment right to due process. (Petition ¶¶ 47–53.)

Petitioner's motion for a temporary restraining order was granted in part, and this Court ordered Respondents not to remove or transfer Petitioner outside the District of Minnesota. (Doc. No. 9.) Respondents were ordered to file their answer by September 10, 2025. (Doc. No. 12.) Petitioner was allowed to file a reply by September 17, 2025. (*Id.*) The temporary restraining order has been extended pending judicial review. (Doc. Nos. 15, 17.)

Having reviewed the submissions from both sides, the record is sufficient to decide Petitioner's claims without an evidentiary hearing. For the reasons that follow, Petitioner's request for a writ of habeas corpus is granted.

## DISCUSSION

### I.  Legal Standard

A writ of habeas corpus may be granted where the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). It is the petitioner's burden to prove illegal detention by a preponderance of evidence. *See Aditya W. H. v.*

4

*Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (collecting cases).

**II.    Analysis**

This case turns on which statute governs Petitioner's detention. Petitioner argues that § 1226 applies, and that his detention without access to bond relief as already ordered by an IJ ignores that statute's provisions. Petitioner also argues that his continued detention—by operation of the automatic stay—violates due process under the Constitution. DHS and ICE insist that mandatory detention under § 1225 applies for all noncitizens who entered the United States without inspection, even if release on bond has already been ordered pursuant to § 1226.

**A.    Statutory Framework: §§ 1225 and 1226**

Section 1225 governs inspection and detention of applicants for admission—those seeking to enter the United States. It states that "[a]n alien present in the United States who has not been admitted or who arrives in the United States, whether or not at a designated port of arrival, … shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission are screened under either § 1225(b)(1) or § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) applies to those initially determined inadmissible for fraud, misrepresentation, or lack of valid documentation, and authorizes expedited removal absent an asylum claim. 8 U.S.C. § 1225(b)(1)(A)(i)–(ii). Section 1225(b)(2) serves as a "catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)," *Jennings*, 583 U.S. at 287, and directs that a person who is "not clearly and beyond a doubt entitled to be admitted," the person "shall be detained." 8 U.S.C.

§ 1225(b)(2)(A). Significantly, neither subsection provides for an entitlement to a bond hearing. *Jennings*, 583 U.S. at 297.

By contrast, § 1226 governs detention of noncitizens already present in the United States and in removal proceedings. 8 U.S.C. § 1226(a). It authorizes arrest and detention "on a warrant issued by the Attorney General," but also allows release on bond "of at least $1,500." 8 U.S.C. § 1226(a)(2). Thus, detention under § 1226(a) is discretionary, and "aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306. Mandatory detention arises only for the narrower category of noncitizens specified in § 1226(c): certain criminal or terrorist offenders.

Respondents contend that Petitioner falls under § 1225(b)(2)'s mandatory-detention provision. The record and statutory framework show otherwise.

When Petitioner was first arrested in 2013, ICE released him under INA § 236—the statutory predecessor of § 1226. (Ligon Decl. ¶ 6, Exs. A, B.) When he was later arrested in August 2025, the charge was being "an alien present in the United States without being admitted or paroled." (Petition ¶ 39.) An immigration judge granted bond under § 1226, finding him not to be a danger or flight risk. (Petition ¶ 44; Ligon Decl. ¶ 11, Ex. D.) Only afterward did the Executive Branch, through DHS, reclassify his case under § 1225(b)(2)—a strategic policy interpretation that effectively stripped away the statutory right to seek bond.

That reclassification runs contrary to the text, structure, and history of the Immigration and Nationality Act, as discussed below.

6

The statutory text confirms that § 1226, not § 1225, governs this case. Courts interpret statutes by their plain language, read in context and "as a whole." *United States v. Ashcraft*, 732 F.3d 860, 862 (8th Cir. 2013). No clause or word should be rendered "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Context, structure, and purpose remain relevant. *Gundy v. United States*, 588 U.S. 128, 141 (2019).

Section 1225(b)(2)(A) provides that "in the case of an alien *who is an applicant for admission*, if the examining immigration officer determines that [the alien] *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." (Emphasis added.) The phrase "applicant for admission" refers to a person "attempting or intending to gain lawful entry into the United States." *Francisco T. v. Bondi*, Civ. No. 25-3219, Doc. No. 20 at 12–13 (D. Minn. Sept. 5, 2025); *see also Lopez-Campos v. Raycraft*, Civ. No. 2:25-CV-12486, 2025 WL 2496379, at *7 (E.D. Mich. Aug. 29, 2025). Nothing in this record suggests that Petitioner was seeking lawful entry when detained. He was living here continuously for more than a decade. Respondents cite no case treating such a person as "seeking admission" under § 1225(b)(2)(A). *See Francisco T.*, Doc. No. 20 at 15. And Congress in its promulgation of the statue has never provided such a definition.

Reading § 1225 to cover those already living in the United States would also erase a recent amendment to § 1226. In 2025, Congress added § 1226(c)(1)(E), which requires mandatory detention only for noncitizens who are inadmissible because of certain crimes. 8 U.S.C. § 1226(c)(1)(E). DHS's broad interpretation of § 1225(b)(2) would make that

7

amendment meaningless, because it would require detention even for noncitizens with no criminal record who are simply present without inspection—those inadmissible under §§ 1182(a)(6)(A) or (a)(7). Interpretations that nullify statutes Congress has enacted are rightly rejected. *See Gomes v. Hyde*, Civ. No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025) (holding that such a reading "would largely nullify a statute Congress enacted this very year"); *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

Section 1226 itself reinforces this boundary. It makes detention mandatory only for certain criminal noncitizens, 8 U.S.C. § 1226(c), and otherwise leaves release to the discretion of an immigration judge under § 1226(a). *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018), confirmed that there are "no other circumstances under which" detention is mandatory for those subject to § 1226. Extending § 1225(b)(2)—which mandates custody for arriving applicants seeking admission—to individuals arrested while residing inside the country would create, at the urging of the Executive Branch, a new judicially-made category of mandatory detention that Congress never authorized, contrary to the statute's text, structure, and the separation of powers the Constitution establishes.

The statutory structure, long recognized by the Supreme Court, draws a bright line between those seeking entry and those already here. *Jennings*, 583 U.S. at 289 ("[I]mmigration law authorizes the Government to detain certain aliens seeking admission . . . under §§ 1225(b)(1) and (b)(2). It also authorizes detention of certain

8

aliens already in the country . . . under §§ 1226(a) and (c)."); *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). Congress has never erased that boundary.

The Government's new reliance on *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (B.I.A. 2025), deserves no deference. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024) (stating that only long-standing and consistent interpretations merit weight); *see also I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996); *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024). The BIA's position departs sharply from decades of uniform interpretation and from the text itself. *See Pizarro Reyes v. Raycraft*, Civ. No. 25-12546, 2025 WL 2609425, at *6–7 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, Civ. No. 1:25-CV-11981-JEK, 2025 WL 2607924, at *8 n.11 (D. Mass. Sept. 9, 2025).

This Court must presume Congress meant what it wrote. Section 1225(b)(2) governs applicants for admission at the border and mandates custody without bond while admissibility is determined. Section 1226 applies to noncitizens already present and allows for detention pending removal, with bond hearings before an immigration judge. Petitioner was arrested inside the United States, far from any port of entry, after residing here continuously since 2003. ICE initially detained him under § 1226, and an immigration judge ordered his release on bond. Only afterward did the Executive Branch, through DHS, reclassify his case under § 1225(b)(2), applying a policy interpretation that effectively stripped away the statutory right to seek bond.

9

*Jennings* instructs that detention statutes must be read in light of Congress's structure and purpose. 583 U.S. at 294. Expanding § 1225 to cover long-time residents would collapse the distinct detention systems Congress created and render § 1226 superfluous. The text, structure, and precedent all point in one direction: § 1226 governs this case. DHS's reclassification contradicts Congress's statutory framing and eliminates the bond protection Congress preserved. Respondents seek to keep Petitioner detained under a statutory provision that does not apply to him, and in contravention of the statute Congress enacted. He is entitled to immediate release under the immigration judge's bond order.

**B.     Jurisdiction**

Respondents argue that this Court lacks jurisdiction to review Petitioner's detention, relying on 8 U.S.C. §§ 1252(g) and 1252(b)(9). Neither provision divests the Court of habeas jurisdiction here.

**1.     Section 1252(g)**

Section 1252(g) provides that, except as otherwise specified, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g) (authority now exercised by DHS following the Homeland Security Act of 2002).

Respondents contend that Petitioner's detention "arises from" DHS's decision to commence removal proceedings and therefore falls within § 1252(g). That argument reads the statute far too broadly. The Suspension Clause permits Congress to restrict the

10

writ of habeas corpus only "in Cases of Rebellion or Invasion." U.S. Const. art. I, § 9, cl. 2. Statutes limiting judicial review of detention must be read through that lens. *See INS v. St. Cyr*, 533 U.S. 289, 301, 305 (2001).

The Supreme Court has repeatedly held that the scope of § 1252(g) is narrow. It applies only to three discrete actions: commencing proceedings, adjudicating cases, or executing removal orders. *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *Jennings*, 583 U.S. at 294; *Reno v. Am.–Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Section 1252(g) does not encompass collateral challenges to detention itself, apart from these three discrete actions. Federal regulations confirm the same distinction: "Consideration . . . regarding custody or bond . . . shall be separate and apart from . . . any . . . removal hearing or proceeding." 8 C.F.R. § 1003.19.

Petitioner does not challenge the decision to commence, adjudicate, or execute a removal order. He challenges only the legality of his ongoing confinement—precisely the kind of claim squarely cognizable in habeas. *See St. Cyr*, 533 U.S. at 301. The question of whether § 1225 or § 1226 governs his detention is purely a legal question. Accordingly, this claim falls outside the narrow limits of § 1252(g); that provision does not bar review of a challenge to ongoing detention. *See Ozturk v. Hyde*, 136 F.4th 382, 387–88 (2d Cir. 2025).

Courts in this District addressing this issue generally agree. *See Antonia A.M. v. Olson*, Civ. No. 25-3142 (SRN/SGE), 2025 WL 2374411, at *5–6 (D. Minn. Aug. 15, 2025); *Jose J.O.E. v. Bondi*, Civ. No. 25-3051 (ECT/DJF), 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025); *Dogukan G. v. Trump*, 784 F. Supp. 3d 1175, 1185 (D. Minn.

11

2025); *Aditya W.H.*, 782 F. Supp. 3d at 704; *but see Acxel S.Q.D.C. v. Bondi*, Civ. No. 25-3348 (PAM/DLM), 2025 WL 2617973, at 2–3 (D. Minn. Sept. 9, 2025). And courts elsewhere have reached the same conclusion. *See Cardoso v. Reno*, 216 F.3d 512, 516 (5th Cir. 2000); *Mosqueda v. Noem*, Civ. No. 5:25-CV-2304, 2025 WL 2591530, at *3 (C.D. Cal. Sept. 8, 2025); *Kostak v. Trump*, Civ. No. 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Leal-Hernandez v. Noem*, Civ. No. 1:25-CV-2428-JRR, 2025 WL 2430025, at 5–7 (D. Md. Aug. 24, 2025).

### 2. Section 1252(b)(9)

Turning to § 1252(b)(9), that provision likewise does not bar jurisdiction. It channels judicial review of "all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States" into a petition for review of a final order of removal. 8 U.S.C. § 1252(b)(9). Petitioner here is seeking no such review. He challenges the legality of his continued detention after an immigration judge previously ordered release on bond.

Respondents' reading would transform § 1252(b)(9) from a narrow channeling rule into what the Supreme Court has warned it is not—a black hole that swallows every claim tangentially related to removal proceedings**.** *Jennings*, 583 U.S. at 294–95 (finding § 1252(b)(9) "not a jurisdictional bar" where the detainees were not asking for review of an order of removal). Petitioner's claim is "independent of, and collateral to, the removal process." *Antonia A.M.*, 2025 WL 2374411, at *6; *see also* 8 C.F.R. § 1003.19(d).

A petition for review with the BIA and then the court of appeals cannot substitute for habeas review of ongoing detention. Neither the immigration judge nor the BIA may

12

decide constitutional issues, and the BIA would not develop a factual record on such claims. *Ozturk*, 136 F.4th at 400 (noting that "neither the IJ nor the BIA has jurisdiction to decide constitutional issues"). Nor does the Eighth Circuit have authority to conduct or order a bond hearing in the first instance; its review of immigration matters is limited to the administrative record accompanying a final removal order. 8 U.S.C. § 1252(b)(4)(A).

The Constitution forbids suspending the writ without providing an adequate substitute. Congress may curtail habeas jurisdiction only if it offers "a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention." *Swain v. Pressley*, 430 U.S. 372, 381 (1977); *see also Boumediene v. Bush*, 553 U.S. 723, 779 (2008). Section 1252(b)(9) provides no such substitute, and the petition-for-review process—limited to appellate review of a fixed administrative record—cannot furnish the equitable relief that habeas historically provides, such as bond hearings or orders addressing unlawful confinement.

For these reasons, this Court joins the many district courts that have held they retain jurisdiction over statutory and constitutional challenges to immigration detention. *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 901 (D. Minn. 2020); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075–76 (9th Cir. 2006); *Hasan v. Crawford*, Civ. No. 1:25-CV-1408, 2025 WL 2682255, at *4 (E.D. Va. Sept. 19, 2025); *Vazquez v. Feeley*, Civ. No. 2:25-CV-1542, Doc. No. 30 at 13–16 (D. Nev. Sept. 17, 2025); *K.E.O. v. Woosley*, Civ. No. 4:25-CV-74-RGJ, 2025 WL 2553394, at *2 (W.D. Ky. Sept. 4, 2025); *Jose J.O.E.*, 2025 WL 2466670, at *7; *Romero v. Hyde*, Civ. No. 25-11631-BEM, 2025 WL 2403827, at *4 (D. Mass. Aug. 19, 2025).

Accordingly, neither § 1252(g) nor § 1252(b)(9) strips this Court of habeas jurisdiction. Habeas remains available to ensure that no branch of government detains a person in violation of law. *See Boumediene*, 553 U.S. at 765 ("[T]he writ . . . is itself an indispensable mechanism for monitoring the separation of powers.").

### C.  Exhaustion of Administrative Remedies

Respondents also argue that Petitioner has failed to exhaust his administrative remedies. They contend that the issue of Petitioner's detention should run its course through the BIA because the BIA has an "institutional interest" to protect its "administrative agency authority." (Doc. No. 13 at 35.) Exhaustion, however, does not bar review.

First, there is no statutory exhaustion requirement for a noncitizen challenging immigration detention through a habeas petition under 28 U.S.C. § 2241, the statute authorizing federal courts to review the legality of custody. *Jose J.O.E.*, 2025 WL 2466670, at *5*. Any exhaustion obligation under § 2241 is judicially created and applied in the Court's discretion. *Id.*

Second, exhaustion serves no purpose where the administrative body lacks jurisdiction or capacity to resolve the claim. As discussed in the jurisdiction section above, the BIA cannot decide constitutional questions or review the legality of detention under §§ 1225 or 1226, and it does not develop a factual record suitable for such review. *See Ozturk*, 136 F.4th at 400. Under those circumstances, exhaustion is both unwarranted and waived. *See Jose J.O.E.*, 2025 WL 2466670, at 6.

14

Third, the administrative process would not only be futile but would also risk irreparable harm. Data before other courts shows that the average BIA processing time for bond appeals exceeded 200 days in 2024. *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1248 (W.D. Wash. 2025). During that period, Petitioner would remain confined despite an existing immigration judge bond order. The law does not require exhaustion where delay would nullify the remedy sought.

Finally, further administrative review would be futile in light of the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025), which upheld DHS's new § 1225 policy and held that immigration judges "lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission." Where the agency has already adopted a definitive position, exhaustion serves no purpose. *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992).

    **D.**    **Automatic Stay: Fifth Amendment Violation**

Petitioner also raises a separate due process claim. The Fifth Amendment prohibits the federal government from depriving any person—citizen or noncitizen—of life, liberty, or property without due process of law. U.S. Const. amend. V; *Mathews v. Diaz*, 426 U.S. 67, 78 (1976). Civil detention is constitutionally permissible only when special, nonpunitive circumstances justify the restraint. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *see also Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976). These protections extend to immigration proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993).

Here, the immigration judge previously ordered Petitioner released on bond. Petitioner remains in custody only because DHS invoked the automatic-stay provision,

8 C.F.R. § 1003.19(i)(2). That regulation provides that when DHS files an appeal of an immigration judge's bond decision, the filing automatically stays the immigration judge's release order—keeping the noncitizen detained until the Board of Immigration Appeals rules on the appeal.

The record contains no evidence that DHS made any showing of dangerousness, flight risk, or any other basis for continued detention. Instead, by operation of the regulation, DHS nullified the immigration judge's order without any new hearing or opportunity for Petitioner to contest his confinement.

"The essence of due process," the Supreme Court has explained, "is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it." *Mathews*, 424 U.S. at 348–49 (quotations and parenthesis omitted). Invoking § 1003.19(i)(2) as DHS did here deprived Petitioner of both notice and opportunity, transforming the regulation into an unfair and improper procedure. *Cf. Bridges v. Wixon*, 326 U.S. 135, 152–53 (1945) (stating administrative rules are designed to ensure due process and guard against "essentially unfair procedures").

This decision aligns with others confronting the issue, holding that such use of the automatic-stay provision violates due process. *See Jose Augusto Alves da Silva v. U.S. Immigr. & Customs Enf't, Bos. Field Off. Acting Dir.*, No. 25-CV-284-LM-TSM, 2025 WL 2778083, at 4–6 (D.N.H. Sept. 29, 2025) (finding § 1003.19(i)(2) unconstitutional and collecting cases); *Dogukan G.,* 784 F. Supp. 3d at 1190.

Because DHS's invocation of the automatic stay deprived Petitioner of a

meaningful opportunity to challenge his confinement, it violated his right to procedural due process under the Fifth Amendment.

### III.   Conclusion

For all these reasons—and consistent with the conclusions reached by nearly every court to consider the question—§ 1225(b)(2) governs detention of noncitizens seeking entry from outside the United States, and § 1226 governs detention of those already present within the country. DHS and ICE's policy of reclassifying interior arrests under § 1225 is contrary to law. That policy effectively eliminates the bond hearings Congress provided, nullifies bond rulings already issued by immigration judges, and evades the judicial review that both Congress and the Constitution require.

DHS's use of the automatic-stay regulation to block release after a lawful bond determination separately violates the Fifth Amendment's guarantee of due process.

Accordingly, the habeas petition is granted. A bond hearing has already been held, and an immigration judge ordered Petitioner's release on bond pending further proceedings. DHS must comply immediately with that order and release Petitioner under the conditions set by the immigration judge.

### ORDER

Based on the foregoing, and on all the files, records, and proceedings in this case,

**IT IS HEREBY ORDERED** that:

1.    Petitioner Eliseo A.A.'s Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. No. 1) is **GRANTED**.

2.    Petitioner shall be released from custody, subject to the conditions

previously imposed by the immigration judge, including the $5,000 bond.

3. Any request by Petitioner for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, must be filed with supporting documentation and a proposed order on or before October 24, 2025.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: October 8, 2025

*s/ Jerry W. Blackwell*
JERRY W. BLACKWELL
United States District Judge